**THIRD DIVISION**
**BARNES, P. J.,**
**BOGGS and BRANCH, JJ.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules/

**September 24, 2014**

# In the Court of Appeals of Georgia

A14A0946. VIS v. HARRIS et al.

BARNES, Presiding Judge.

Faythe Vis tripped and fell while a guest at a Sheraton Hotel in Atlanta. She sued hotel employee Niles Harris, hotel owner Starwood Hotels & Resorts Worldwide, Inc., and hotel management company Amerimar Courtland Management Co., Inc. Although Vis served Amerimar with discovery requests along with the complaint and Amerimar answered, it never responded to the requests for admissions. A jury trial resulted in a defense verdict, and Vis appeals, contending that the trial court erred in sua sponte declaring that Vis improperly read Amerimar's admissions to the jury at the beginning of the trial and in withdrawing them from the jury's consideration. We agree that the trial court erred, and reverse.

Vis initially identified the hotel's management or maintenance company as John Doe 1-2 in her complaint for damages, and then successfully moved to substitute

Amerimar as a defendant. Amerimar's agent was served with process and discovery requests on December 2, 2010. Vis moved for the entry of a default judgment against Amerimar in August 2010, and Amerimar moved to open the default. On October 27, 2011, the trial court denied Vis's motion for a default judgment and granted Amerimar's motion to open the default. While Amerimar answered the complaint, it admits that it never responded to the requests for admissions.

The parties had numerous discovery disputes as the litigation unfolded. In October 2012, the three defendants moved for summary judgment, arguing that the static defect on which Vis tripped was open and obvious, and that her knowledge of the defect was equal or superior to theirs. In response, Vis argued that the record showed the existence of jury questions and also argued that Amerimar had never answered her requests for admissions and therefore had admitted being at fault for causing damages to Vis. Vis included the requests for admission as an exhibit. The trial court stamped the defendants' motion for summary judgment as "denied" without explanation.

Vis filed three pre-trial orders as the case continued. In each one, her brief and succinct outline of the case included the statement, "The Amerimar defendant admitted the case through Admissions served on them without a response." On the

day trial began, the trial court signed the parties' proposed consolidated pre-trial order, which again contained the statement concerning Amerimar's admissions.

At trial, after the parties gave their opening statements, the court directed Vis's lawyers to call the first witness. One of Vis's lawyers replied,

> Your Honor, we have admissions of Amerimar Courtland Management Company. Number Eight, You're at fault for the accident causing damages to the plaintiff. Number Nine, You did not have a proper inspection procedure in place on the date of the accident. Number Ten, the Plaintiff sustained serious injuries. Number 11, The medical expenses incurred by the Plaintiff are reasonable and customary. Number 12, You were warned of the defect prior to the accident. Number 13, No warnings were posted of the hazard prior to the Plaintiff's fall. Number 14, You had notice of the hazard prior to the Plaintiff's fall. Number 15, You were the proximate cause of the Plaintiff's injuries. Number 16, Your negligence is the proximate cause of the Plaintiff's injuries. Number 17, You had video cameras in the hotel at the time of the fall. Number 18, Your video cameras videotaped the plaintiff's fall.

The defendants raised no objections. Vis's other lawyer then said, "Thank you. Your Honor, we call as our first witness, Victor McMahon," and the trial proceeded. McMahon was a guest at the hotel three weeks before Vis fell and testified he had also tripped on a rise in the carpet that was not visible. Another witness testified that

he took photographs of the area where Vis fell and that the flooring under the carpet was uneven. A medical narrative was read into the record, Vis testified, and her husband testified briefly.

Vis rested and the defendants moved for a directed verdict. Vis responded that she fell on a static defect that she proved was in existence three weeks before she fell, so notice to the defendants was presumed. She argued that this was not a case for directed verdict as it had not been a case for summary judgment "[f]or the same reasons as well in the motion for summary judgment as to Amerimar, which is conclusively established as well as any case against Courtland Hotels, LLC." The trial court denied the motion and the defendants called the assistant director of loss prevention, who testified about an incident report his predecessor had created after Vis fell. Over objection, the assistant director read statements from three hotel guests that had been included in the report, two of whom said it looked as if Vis fell because her shoe got stuck on the carpet. One of those guests subsequently testified that while the floor had a slight incline where Vis fell, that was not the cause of her fall; it was that her foot stopped and Vis lost her balance and fell. Finally, a witness who was qualified over objection as "an engineering expert for purposes of reviewing the area of plaintiff's fall and providing testimony regarding any defect" testified that in 2012

he reviewed the area where Vis fell in 2008, that the carpet had been replaced there in 2011, and that he had seen no surface irregularity.

After both parties rested, the trial court dismissed the jury and directed the lawyers to remain for the charge conference. The court said, "[The law clerk] is going to go through the charges with y'all and narrow it down and go through what's agreed and what's not agreed and then we'll go back and take the ones that we'll give." After a lunch break, the court reconvened and said,

> First of all, I understand there is an issue regarding the admissions now that were read into the record after opening statements by the plaintiff. When that was done, I didn't know what they were for, what they were being read for. Your co-counsel simply stood up and started reading them and did not obtain a ruling from this court regarding those alleged admissions and not [sic] what was the background for them and how they became admissions. That was not addressed. I'm going to have this case submitted to the jury as a negligence case, which is what we've been trying here for the last couple of days; so, that's my ruling regarding those admissions.

After further discussion, the trial court allowed Vis's counsel to make a record of the ruling, and Vis's counsel first noted that the court had ruled absent any request from the defendants for affirmative relief and was attempting to "unring a bell that's already been rung with the jury. We read those into evidence because we hid them in

5

plain sight[,] the admissions we talked about today." In response to the defendants'

motion for a directed verdict earlier in the trial, counsel noted, she had said,

"Amerimar has conclusively established fault." Counsel further noted, "We had,

yesterday, properly read them into evidence at the start of our trial. There's no law or

authority that says we have to ask the judge's permission to read admissions into

evidence to my knowledge."

> The court replied that it had not made a determination or issued an order that

> they were deemed admissions and there wasn't agreement by the
> counsel. . . . What I thought he was reading were stipulations . . . when
> he just stood up and just started. He said I'm going to read this into the
> record, no background, no anything. . . . He just stood up and just said,
> I'm going to read these into the record. . . . No background, no anything,
> where it would have come from, no ruling from the court. He just started
> reading.

> Vis's counsel replied, "My statement to the court, your Honor, would be that

that's proper procedure. I've never done it any other way, particularly when we had

it in the pretrial, the consolidated pretrial." Then the court ruled,

> All right. Well, I don't want to get into a long, drawn[-]out discussion
> about it. I'm going to let you make the record of your objection to my
> ruling, which is that I'm going to have this case submitted as a
> negligence case in front of this jury, which is what we've been trying for

6

the last couple of days, including you have put on evidence in the plaintiff['s] case regarding this being a negligence case. And that's what this jury is — that's what I'm going to have submitted to the jury. And if you have an objection to that, then go ahead and make the record because I need to move on.

Vis's counsel responded,

That's what I'm trying to do, your Honor. I'm trying to make the record. There were three defendants in this case, two of which did not admit the case. That would be the case that we were making upon negligence. The third one, Amerimar Courtland Management, admissions were served on them by the sheriff on December 15, 2010. The responses would be due January 29, 2011, which would be the statutory 45-day period. As of today, no admission responses have been received from Amerimar, despite at least four plain warnings from plaintiff.

Vis's counsel continued that on page ten of her brief in opposition to the defendants' motion for summary judgment, a heading stated, "The Amerimar Courtland Management Company, Incorporated, the defendant[,] has admitted the case" and the brief then detailed how it had admitted the case by failing to respond to the request for admissions that had been served upon it. Counsel then noted that in proposed pretrial orders she filed on August 13, 2013, and September 11, 2013, and in the parties' proposed consolidated pretrial order filed on September 19, 2013,

7

she said, "The Amerimar defendant admitted the case through admissions served on them without a response." Counsel further noted that the admissions had been read into the evidence, and that he had responded to the defendants' motion for directed verdict by noting, among other things, that the case had been conclusively proved against Amerimar, and the trial court had denied that motion. Therefore, Vis's counsel concluded, it would be reversible error "not to continue to tell the jury that they have admitted the case."

After Vis's counsel thanked the court for the opportunity to perfect the record, the court asked if defense counsel had anything for the record, and counsel replied, "No, nothing for the record." The trial court then asked if either party objected to its verdict form, and in response to Vis's objection to providing a place for the jury to find that Vis had been contributorily negligence, the court replied, "All right," then proceeded to list the requested charges it was going to give and gave the parties an opportunity to make objections. In her closing argument, Vis did not address Amerimar's admissions.

1. Vis argues on appeal that the trial court erred in sua sponte withdrawing Amerimar's admissions from the jury's consideration after the close of evidence.

(a) Vis contends that, despite the trial court's statements to the contrary, she was not required to obtain a ruling from the court that the admissions were admissions, nor was she required to obtain the court's permission to use them during trial. Amerimar replied that, while it admits failing to respond to Vis's requests for admissions, its "lack of response was not raised before the trial court before trial." Amerimar further argues that reciting the admissions to the jury was not a proper method of introducing them as evidence.

OCGA § 9-11-36 (a) (1) allows a party to serve on the other party written requests for admission regarding any matter within the scope of discovery as set forth in OCGA § 9-11-26 (b). The matters are deemed admitted unless the recipient serves upon the party making the request written answers within 30 days of service or within 45 days of service of the summons and complaint. OCGA § 9-11-36 (a) (2). "Any matter admitted under this Code section is conclusively established unless the court, on motion, permits withdrawal or amendment of the admission." OCGA § 9-11-36 (b).

The statute does not prescribe the method by which admissions should be placed before the jury. Being substantive evidence, admissions must be placed into evidence at trial in some form to be considered by the factfinder. See, e.g., *Batosz v.*

9

*Chapparal Enter.*, 271 Ga. App. 246, 248 (1) (609 SE2d 185) (2005) ("[A]n admission must be introduced into evidence before it can be considered by the trier of fact"); *Harper v. Samples*, 164 Ga. App. 511 (1) (298 SE2d 29) (1982) (appeals court cannot consider admissions that were not introduced in evidence at trial); *Nat. Bank of Ga. v. Hill*, 148 Ga. App. 688, 689 (1) (252 SE2d 192) (1979) ("[A]dmissions constitute matters of proof and of evidence and before they can be considered by the trier of the facts, they must be introduced in evidence.").

Here, Vis's lawyer announced to the court, "Your Honor, we have admissions of Amerimar Courtland Management Company," and proceeded to read them out loud without any objection being raised. Reading the admissions to the jury clearly placed them into evidence.

The defendants contend that Vis failed to file into the trial court record the requests deemed admitted. Under OCGA § 9-11-29.1 (a) (5), however, a party is not required to file discovery material unless it "is to be used at trial . . . *and* said material has not previously been filed under some other provision of this chapter." (Emphasis supplied.) As noted earlier, the record in this case establishes that Vis filed the admissions as an exhibit to her opposition to the defendants' motion for summary

judgment, and therefore they had previously been filed in compliance with OCGA § 9-11-29.1 (a) (5). She was not required to file them again at trial.

(b) Vis further argues that the trial court erred in withdrawing the admissions from the jury's consideration, absent a motion from the defense and after the close of evidence. Amerimar responds that the trial court never withdrew the admissions from the jury's consideration. Instead, the admissions were read into the record and the trial court never told the jury to disregard them. Thus, the defendants argue, Vis can show no harm.

As stated previously, "[a]ny matter admitted under this Code section is conclusively established unless the court, *on motion*, permits withdrawal or amendment of the admission." (Emphasis supplied.) OCGA § 9-11-36 (b). Subsection (b) also lays out the criteria that must be met to allow withdrawal, and there was no showing here that those criteria were met. See *Elrod v. Sunflower Meadows Development*, 322 Ga. App. 666, 668 (1) (745 SE2d 846) (2013) (party seeking withdrawal made showing that presentation of the merits would be subserved and opposing party failed to satisfy court that withdrawal would prejudice the maintenance of action or defense).

11

Amerimar did not answer Vis's request and never moved to withdraw or amend its admissions; thus, the matters admitted were conclusively established as a matter of law, and Vis was not required to obtain a ruling by the trial court to that effect. A trial court has broad discretion to permit the withdrawal of an admission made by failing to timely response to a request, which we review only for abuse. *Velasco v. Chambless*, 295 Ga. App. 376 (1) (671 SE2d 870) (2008). However, "the failure to make a motion to have admissions withdrawn or amended forecloses remedial action under [OCGA § 9-11-36 (b)], [and therefore] the requests for admissions which were not answered or objected to are deemed admitted. *Post-Tensioned Construction, Inc. v. VSL Corp.*, 143 Ga. App. 148, 150 (8) (237 SE2d 618) (1977) ; see also *Brooks v. Roley &c.*, 144 Ga. App. 101, 101-102 (1) (240 SE2d 596) (1977) (verdict reversed where trial court refused to admit admissions as probative evidence, allowing them only for impeachment purposes).

Similarly, in this case Amerimar never moved to withdraw its admissions and the trial court lacked discretion to authorize their withdrawal. And while the trial court did not instruct the jury to disregard the admissions that had been entered into evidence, neither would it allow Vis to argue their conclusive effect to the jury. Thus, we cannot say that the trial court's ruling on the admissions was harmless.

(c) Finally, although the defendants contend that we have nothing to review because the record is unclear about the trial court's actual ruling and because Vis never tried to argue the effect of the admissions during her closing. It is clear from the trial court's statements made after the close of evidence and after the parties had conferred with the court's law clerk about charges, however, that the court ruled that Vis could not argue to the jury that Amerimar had admitted it was at fault. The trial court thus improperly restricted Vis's ability to argue the facts in evidence during her closing argument. As Vis notes in her Reply Brief, she would have been risking contempt if she had ignored the court's ruling and argued the admissions anyway.

2. In light of our ruling in Division 1, Vis's remaining enumeration of error regarding jury selection is moot.

*Judgment reversed. Boggs and Branch, JJ., concur.*